UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RALPH MCGHEE, | No. 2:17-cv-1951 AC P |
| Plaintiff, | |
| v. | <u>ORDER</u> and |
| M. OSMAN, | <u>FINDINGS AND RECOMMENDATIONS</u> |
| Defendant. | |

### **I.  Introduction**

Plaintiff Ralph McGhee is a state prisoner at the California Medical Facility (CMF), incarcerated under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se and in forma pauperis under 42 U.S.C. § 1983, against CMF physician Dr. Osman, on a claim of deliberate indifference to plaintiff's serious medical needs in violation of the Eighth Amendment. See ECF No. 1.

Defendant's motion for summary judgment (ECF No. 23) is before the court, and has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons set forth below, the undersigned recommends that defendant's motion be granted and judgment be entered for defendant.

////

////

## II. Background

In his complaint docketed September 20, 2017, plaintiff alleges that Dr. Osman refused to treat him on January 28, 2017, after plaintiff fell from his bunk while asleep and was taken to the medical clinic for emergency care. Plaintiff alleges that he "hit face-first into the locker in his cell, loosening 2 teeth and injuring his nose and re-injuring his back, left lower hip and right shoulder." ECF No. 1 at 3. Plaintiff alleges that Dr. Osman refused to treat him and told RN Kim to send plaintiff back to his cell. As a result, plaintiff alleges, he "suffered substantial pain to his mouth, back, shoulder and nose [and] endured that pain over the course of a few weeks and still experience[s] numbness of his mouth and inability to properly chew his food." Id. at 3; see also id. at 4-5.

On screening the complaint pursuant to 28 U.S.C. § 1915A, the court found that it stated a cognizable Eighth Amendment claim against Dr. Osman and directed the United States Marshal to serve process on defendant. ECF Nos. 7, 11. Dr. Osman answered the complaint on January 19, 2018. ECF No. 14. On January 23, 2018, the court issued a Discovery and Scheduling Order. ECF No. 15. Defendant filed his motion for summary judgment on January 15, 2019. ECF No. 23. Plaintiff filed an opposition, ECF No. 28; defendant filed a reply, ECF No. 29.

## III. Legal Standards

### A. Legal Standards for Motions for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Securities Litigation), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the

2

adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A), (B).

When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment ... is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. Moreover, "[a] [p]laintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." Lopez v. Smith, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).[1]

---

[1] In addition, in considering a dispositive motion or opposition thereto in the case of a pro se plaintiff, the court does not require formal authentication of the exhibits attached to plaintiff's verified complaint or opposition. See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003) (evidence which could be made admissible at trial may be considered on summary judgment);
see also Aholelei v. Hawaii Dept. of Public Safety, 220 Fed. Appx. 670, 672 (9th Cir. 2007) (district court abused its discretion in not considering plaintiff's evidence at summary judgment, "which consisted primarily of litigation and administrative documents involving another prison and letters from other prisoners" which evidence could be made admissible at trial through the other inmates' testimony at trial);
see Ninth Circuit Rule 36-3 (unpublished Ninth Circuit decisions may be cited not for precedent but to indicate how the Court of Appeals may apply existing precedent).

1    The opposing party must demonstrate that the fact in contention is material, i.e., a fact that
2    might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby,
3    Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Assoc., 809
4    F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a
5    reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers,
6    Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

7    In the endeavor to establish the existence of a factual dispute, the opposing party need not
8    establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
9    dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
10   trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce
11   the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
12   Matsushita, 475 U .S. at 587 (citations omitted).

13   In evaluating the evidence to determine whether there is a genuine issue of fact," the court
14   draws "all reasonable inferences supported by the evidence in favor of the non-moving party."
15   Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011) (per curiam).
16   It is the opposing party's obligation to produce a factual predicate from which the inference may
17   be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985),
18   aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing
19   party "must do more than simply show that there is some metaphysical doubt as to the material
20   facts. … Where the record taken as a whole could not lead a rational trier of fact to find for the
21   nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation
22   omitted).

23   In applying these rules, district courts must "construe liberally motion papers and
24   pleadings filed by pro se inmates and … avoid applying summary judgment rules strictly."
25   Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010). However, "[if] a party fails to properly
26   support an assertion of fact or fails to properly address another party's assertion of fact, as
27   required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion
28   . . . ." Fed. R. Civ. P. 56(e)(2).

**B. Legal Standards for Deliberate Indifference to Serious Medical Needs**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (internal citations, punctuation and quotation marks omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay or intentionally interfere with medical treatment.'" Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).

"In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent. This second prong ... is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v. CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

To prevail on a claim for deliberate indifference to serious medical needs, a prisoner must demonstrate that a prison official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Because "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," the evidence must show the defendant acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991) (internal quotation marks, emphasis and citations omitted).

////

Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. The inference of knowledge from an obvious risk has been described by the Supreme Court as a rebuttable presumption, and thus prison officials bear the burden of proving ignorance of an obvious risk. . . . [D]efendants cannot escape liability by virtue of their having turned a blind eye to facts or inferences strongly suspected to be true . . . ." Coleman v. Wilson, 912 F. Supp. 1282, 1316 (E.D. Cal. 1995) (citing Farmer, 511 U.S. at 842-43) (internal quotation marks omitted).

When the risk is not obvious, the requisite knowledge may still be inferred by evidence showing that the defendant refused to verify underlying facts or declined to confirm inferences that he strongly suspected to be true. Farmer, 511 U.S. at 842. Prisons officials may avoid liability by demonstrating "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances. Id. at 844-45; see also Wilson, 501 U.S. at 298; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010).

### IV. **Facts**

Unless otherwise noted and for purposes of summary judgment alone, the following facts are undisputed by the parties or as determined by the court.[2]

- On Saturday, January 28, 2017, at approximately 3:00 a.m., plaintiff fell from his lower bunk bed while asleep, hitting face-first on a locker in his cell.

- Plaintiff alleges that the fall injured his nose and loosened two of his teeth, and reinjured his back, hip and shoulder.

---

[2] These facts are taken from plaintiff's verified complaint, ECF No. 1, and attached exhibits; Defendant Osman's Separate Statement of Undisputed Material Facts, ECF No. 23-32, and supporting declarations and exhibits; Plaintiff's Declarations in Opposition, ECF No. 28 at 6-8, id. at 12-4; Plaintiff's Statement of Disputed Facts, ECF No. 28 at 9-11.

- After plaintiff's fall, his cellmate called "man down;" two officers arrived and took plaintiff to the B-1 medical clinic.

- At the medical clinic, a nurse assessed plaintiff.[3] The nurse's treatment notes, as reviewed and summarized by defense witness Dr. B. Feinberg, provide as follows:

> [O]n Saturday January 28, 2017, at 0320 hours, [plaintiff] was evaluated by a nurse in the B-l clinic for a complaint of back pain after rolling off a lower bunk bed. There is no notation that Plaintiff complained about his teeth and the nurse made no remarks concerning Plaintiff s teeth. The nurse documented that she assessed Plaintiff from head to toe and that he had no redness, swelling, or bruises. She further noted that while he complained of back pain at a level of 10 on a scale of 1 to 10, he was speaking in clear and complete sentences, denied headache, dizziness, nausea, and vomiting, and that he could stand up with a steady gait with his eyes closed for greater than 10 seconds. The nurse offered Plaintiff a warm compress and acetaminophen 650 mg for back pain, but he declined and demanded a morphine shot. The records reflected that Plaintiff had already been prescribed oral morphine twice daily. The nurse offered to provide Plaintiff with his morning dose of morphine, which would have normally been provided at 0700 hours, a few hours early but Plaintiff refused. . . . [The nurse] called [the on-call physician] Dr. Osman to advise him of Plaintiffs current condition. . . . Plaintiff [also] refused to accept a warm compress.

ECF No. 23-4 at 3 (Feinberg Decl. ¶¶ 6-8)

- Dr. Osman recalls that he responded to the nurse's call as follows:

> On January 27, 2017, through January 28, 2017, I was working as the on-call physician for urgent or emergency occurrences at CMF, and to provide telephone assistance to staff working in the facility and issue orders. At approximately 0340 hours on January 28, 2017, I received a call from the B-1 Facility nurse, advising me of Plaintiff's current condition. The nurse advised me that Plaintiff had rolled out of his lower bunk and had reported pain, but had no objective physical injuries. The nurse had offered Plaintiff over-the-counter medications (acetaminophen 650 mg) as well as his morning dose of morphine to treat his subjective complaints of pain, and a warm compress, but Plaintiff declined the pain relief options offered by the nurse.
>
> Based on the representations that were made to me by the nurse, there was nothing more the clinic could offer Plaintiff at that time. In addition, there was no urgent need for me to come to the clinic to treat Plaintiff. In the event of an urgent or emergent occurrence, I either would have come to CMF or instructed the nurse to call an ambulance. Plaintiff, however, showed no signs of concussion,

---

[3] This nurse, apparently "RN Kim," was not named as a defendant in this action and is variously referenced in the parties' briefs as, inter alia, the "attending," "unidentified" or "on-duty" nurse.

|   |   |
|---|---|
| 1 | fracture, or internal injury, that could have necessitated urgent or emergent intervention. |
| 2 | |
| 3 | In addition, the nurse did not notify me that Plaintiff complained of any problems with his teeth or that he was suffering from any problems with his teeth. Even if the nurse had notified me that Plaintiff was suffering with problems with his teeth, as a physician and surgeon, I could not have offered any immediate relief other than the pain medications that had already been offered to him that morning. |
| 4 | |
| 5 | |
| 6 | |
| 7 | As a result, I instructed the nurse to tell Plaintiff to follow up with his primary care provider on Monday, January 30, 2017, and to return Plaintiff to his housing unit. |
| 8 | |

ECF No. 23-5 at 2-3 (Osman Decl. ¶¶ 4-13).

- Plaintiff received his normal daily course of morphine after he returned to his housing unit on January 28, 2017.

- On Monday, January 30, 2017, plaintiff received a follow-up appointment and was evaluated by his primary care provider, Dr. Petras.

- Plaintiff's further relevant medical records, as reviewed and summarized by Dr. Feinberg, provide as follows:

> Plaintiff was already suffering from advanced chronic periodontitis, having been diagnosed in November 2015. According to Plaintiff McGhee's records, his dentist had determined that his teeth could not be saved as of November 2015. . . .
>
> Following the January 28, 2017 fall, Dr. Petras ordered imaging studies on Plaintiff's nasal bones, facial bones, left-sided ribs, and left-sided hips, all of which were normal and showed no abnormalities. The January 30, 2017 notes prepared by the registered nurse and Dr. Petras do not state that Plaintiff made any complaints in regard to injuries to his shoulders and Dr. Petras did not order any imaging studies on Plaintiffs shoulders. Plaintiff, however, had previously sustained an injury to his right shoulder and imaging studies from September 2016 revealed acromioclavicular joint separation. Plaintiff was ordered to attend physical therapy in September for his right shoulder injury.
>
> In July 2017, Plaintiff again fell out of his bunk. Imaging studies were conducted on his rib cage and left shoulder on July 21, 2017. Following Plaintiffs July fall, Plaintiff sustained a displaced rib, but did not sustain any injuries to his left shoulder.
>
> Plaintiff was evaluated by his Dentist on March 22, 2017, related to his concerns about his loose teeth. However, the Dentist documented his November 2015 advanced chronic periodontitis diagnosis, which

> is a severe gum infection that damages the soft tissue and leads to loose teeth. The Dentist noted that Plaintiff's imaging studies had previously shown severe bone loss, resulting in the inability to save his upper teeth.

ECF No. 23-4 at 4-5 (Feinberg Decl. ¶¶ 11-5).

## V. <u>Analysis</u>

Defendant argues that the undisputed facts demonstrate that plaintiff was not suffering from a serious medical need and that defendant was not deliberately indifferent to any of plaintiff's medical needs. ECF No. 23-2 at 1. Defendant contends that plaintiff sustained no objective injuries and declined proffered treatments for his complaints of pain. ECF No. 23-2 at 5.

Plaintiff opposes summary judgment on the ground that defendant "acted pursuant to a policy of [] failing to provide plaintiff with prescription pain medication – morphine, which [e]quates to defendant providing no assessment whatsoever, as the record is silent on the issue of plaintiff's teeth, and thus no assessment as to plaintiff's pain level as to same." ECF No. 28 at 1. In his complaint, plaintiff alleged broadly that Dr. Osman "refused to treat Plaintiff. Defendant told RN Kim to send Plaintiff back because, 'I know him,' thereby denying plaintiff medical care."[4] ECF No. 1 at 3. Plaintiff alleged that as a result he "suffered substantial pain to his mouth, back, shoulder and nose. He endured that pain over the course of a few weeks and still experience[s] numbness of his mouth and inability to properly chew his food." ECF No. 1 at 3.

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting Estelle, 429 U.S. at 104). "Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that

---

[4] Plaintiff also alleged that he "found out at a later date that Dr. Osman was under the erroneous assumption that Plaintiff was seeking out assignment to a low bunk. Defendant assumed incorrectly, however, as Plaintiff was and is already assigned to a low bunk. Thus, the denial of medical care constitutes 'deliberate indifference' to Plaintiff's serious health care needs, because Defendant knew of – or should have known of – as serious risk to Plaintiff's health care needs but failed to abate it." ECF No. 1 at 3.

9

significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)).

The parties dispute whether plaintiff presented serious medical needs to the nurse and Dr. Osman in the early morning hours of January 28, 2017. In his verified complaint, plaintiff alleged that he fell face-first onto a locker, loosening two of his teeth and injuring his nose, causing pain to his mouth and nose, and exacerbating the pain in his previously-injured shoulder, back and hip. ECF No. 1 at 3-5. However, upon examining plaintiff, the nurse found no redness, swelling or bruises, and made no reference to plaintiff's teeth, mouth or nose. The nurse did, however, note plaintiff's complaints of significant back pain. The nurse informed Dr. Osman that plaintiff suffered no objective injuries but complained of pain.

On summary judgment this court is required to liberally construe the evidence and plaintiff's verified allegations and draw all reasonable inferences in plaintiff's favor. So viewing the record, the undersigned finds that a jury could reasonably conclude that plaintiff's subjective complaints of pain on January 28, 2017 were sufficiently serious to support a deliberate indifference claim. Such a finding is supported by plaintiff's proffered testimony and by the fact that the nurse found plaintiff's complaints sufficiently credible to offer him a warm compress, acetaminophen and/or early administration of his regular morning morphine dose. See Lopez, 203 F. 3d at 1131 (injury or pain "worthy of treatment").

The question then becomes whether defendant Dr. Osman was deliberately indifferent to plaintiff's serious medical needs within the meaning of the Eighth Amendment. "A defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established." McGuckin, 974 F.2d at 1060. Plaintiff's principal argument is that Dr. Osman should have authorized an extra dose of morphine rather than merely offering early administration of plaintiff's regular morphine dose. However, plaintiff has presented no evidence to support a reasonable inference that defendant's decision was "unacceptable under the circumstances," or chosen "in conscious disregard of an excessive risk to

plaintiff's health." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citations omitted). On the contrary, the "early administration" morphine option appears to have reflected both the nurse's and Dr. Osman's acknowledgment of plaintiff's pain and attempt to treat his pain without creating additional risks to plaintiff's health. Dr. Osman has explained, ECF No. 23-5 at 2 (Osman Decl. ¶ 14):

> For patients with chronic pain conditions on a pain management regimen that includes an opioid, such as morphine, I defer any modifications to that regimen to the inmate's primary care provider. As a result, I would not have ordered an additional morphine shot because Plaintiff was already prescribed a morphine regimen.

This reasoning, particularly within the context of plaintiff refusing all other proffered pain treatment options, appears medically prudent both as a general rule and under these specific circumstances. Plaintiff's refusal to accept other treatment options indicates that his pain was not as severe as he alleged, an inference likely reached by both the nurse and Dr. Osman. The undersigned finds that no reasonable trier of fact could conclude that Dr. Osman "purposefully ignored" or "failed to respond" to plaintiff's serious medical needs. McGuckin, 974 F.2d at 1060. Even if Dr. Osman instructed the nurse to send plaintiff back to his cell because he "knew him" (which Dr. Osman denies),[5] such instruction would have been reasonable based on plaintiff's request to obtain additional morphine while refusing to accept any of the offered pain treatments.

For these reasons, the undersigned finds that plaintiff has presented insufficient evidence to demonstrate a material factual dispute refuting Dr. Osman's evidence he was not deliberately indifferent to plaintiff's complaints of pain on January 28, 2017.

Finally, plaintiff has presented no evidence to support a reasonable inference that Dr. Osman was deliberately indifferent to plaintiff's serious dental needs on January 28, 2017. No evidence indicates that any delay in treating plaintiff's teeth – or the failure to provide additional

---

[5] Dr. Osman states, ECF No. 23-5 at 3:
> I am also aware that Plaintiff alleges that I made a statement to the nurse about knowing the Plaintiff and to therefore returned him back to his housing unit on that basis, but that allegation is incorrect. Plaintiff was retuned back to his housing unit because the clinic could not offer him any further relief.

Osman Decl. ¶ 15.

11

morphine – caused additional harm to plaintiff's teeth or mouth. Defendant has presented persuasive evidence that as early as November 2015 plaintiff suffered from advanced chronic periodontitis resulting in the loosening and loss of some of his teeth. Even if plaintiff's teeth were further injured by the January 28, 2017 fall, he has provided no evidence indicating that referral to a dentist prior to his subsequent evaluation on March 22, 2017 would have made any difference in his dental health. "[M]ere delay of [treatment], without more, is insufficient to state a claim of deliberate medical indifference" unless the delay caused harm to plaintiff. Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (citing Estelle, 429 U.S. at 106). More specifically, "delay in providing a prisoner with dental treatment, standing alone, does not constitute an eighth amendment violation." Hunt v. Dental Department, 865 F.2d 198, 200 (9th Cir. 1989); accord, Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002).

For these reasons, the undersigned finds that plaintiff has presented insufficient evidence to demonstrate a material factual regarding Dr. Osman's deliberate indifference to plaintiff's dental needs on January 28, 2017.

Because defendant has identified a "complete failure of proof" as to Dr. Osman's deliberately indifferent state of mind regarding plaintiff's pain and dental needs, defendant is entitled to judgment as a matter of law. See Celotex, 477 U.S. at 322.

**VI. Conclusion**

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that the Clerk of Court shall randomly assign a district judge to this action.

Further, IT IS HEREBY RECOMMENDED that:

1. Defendant Osman's motion for summary judgment, ECF No. 23, be GRANTED;

2. Judgment be entered for defendant Osman; and

3. This case be closed.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one (21) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned

"Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 5, 2019

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE